433 A.2d 25

**COMMONWEALTH of Pennsylvania**

v.

**Thomas J. TONER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed Feb. 6, 1981.

Rehearing Denied April 14, 1981.

---

1. Because of our disposition of this issue, we will not address appellant's other contentions.

Joseph D. Grandinetti, Jr., Trevose, for appellant.

Kenneth G. Biehn, District Attorney, Doylestown, for Commonwealth, appellee.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

HESTER, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Bucks County. The procedural history and facts relevant to the issues on appeal are as follows:

On July 5, 1978, James Marble, a Pennsylvania State Policeman, received an anonymous tip that there was a large quantity of marijuana in Apt. 5, Building H of the Knights-brook Apartments in Bucks County. The anonymous caller further indicated that she had seen numerous people includ-ing a Diane Marie Quinn engaged in the act of smoking marijuana. Trooper Marble was unable to locate the caller although he attempted to do so. After verifying that Diane Marie Quinn was one of the persons living in the apartment, Marble conducted a surveillance. On July 6, he detected a strong odor of marijuana coming from the apartment by placing his nose near the crack between the floor and the door. On Monday, July 10, when there were enough state troopers to assist in the execution of the warrant, a search warrant was obtained. Upon execution, appellant, who shared the apartment with Quinn was arrested and charged with possession and possession with intent to deliver nine pounds of marijuana. After appellant's motion to suppress was denied, he proceeded to trial non-jury and was found guilty of both charges. After post trial motions were de-nied, he was sentenced to four to twenty-three months imprisonment. This timely appeal followed.

Appellant concedes that probable cause to search existed on July 6, 1978, but argues that the information was stale on July 10, the date of issuance of the warrant.

We have held that in determining whether the lapse in time prior to the issuance of a warrant is so great that there no longer is probable cause to believe that the items to be seized are still on the premises, the magistrate should examine the facts and circumstances of the particular case before him. *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974). "The information supplied the magistrate must be tested with a common sense non-technical, ungrudging, and positive attitude." *Rosencranz v. U. S.*, 356 F.2d 310, 314 (1st Cir. 1966); *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973).

We note that the anonymous tip received by the officer indicated marijuana had been smoked over the past 7 days in the apartment by a number of white males and females including Diane Marie Quinn, who lived there. The officers own investigation corroborated the fact that marijuana was being smoked in this particular apartment. Although the officer did not indicate a specific reason for the delay, he did testify that on July 10, 1978, there were sufficient State Police officers available to execute the warrant. We take judicial notice of the fact that July 4th was a holiday, and the minimal delay occurred over a holiday weekend. A review of the cases cited by appellant discloses that delays substantially longer than in the instant case were involved therein. *Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582 (1975) (5 months delay); *Commonwealth v. Hagan*, 240 Pa.Super. 444, 368 A.2d 318 (1976) (1½ months delay); *Commonwealth v. Eazor*, 455 Pa. 320, 312 A.2d 398 (1973) (2 months delay).

We have held that nine days delay between the commission of a theft and the issuance of a search warrant does not render the information stale. *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974). The information received here was that Diane Quinn and others in the

apartment were in possession of and were smoking large quantities of marijuana over a period of seven days prior to the call received by the police. There was, therefore, probable cause for the magistrate to believe under the facts herein, that this course of conduct was a continuing one for four days thereafter.

Since we find that the information was not stale, and the search warrant was valid, we need not decide the remaining issue as to appellant's statement having resulted from an unlawful search.

Judgment affirmed.

LIPEZ, J., files a dissenting opinion.

LIPEZ, Judge, dissenting:

Appellant was convicted, after a non-jury trial, of possession of marijuana [1] and possession of a controlled substance with intent to deliver.[2] I would reverse and remand for a new trial.

On July 5, 1978, an unidentified telephone caller told state police that she had seen a large amount of marijuana in a certain apartment, and that she had observed a number of persons, including one Diane Marie Quinn, whom the caller identified as lessee of the apartment, smoking it. The investigating state trooper then inquired of local police and was informed that Quinn was a lessee of the apartment. On the evening of July 6, 1978, the trooper drove to the apartment building to investigate further. After remaining in the building's parking lot for some time, and observing no suspicious activity, he entered the building and walked up to the door of the apartment. There, he smelled marijuana being burned, his recognition thereof deriving from special police training and experience. He determined that the odor was coming from the suspect apartment, but departed without making his presence known to the occupants. Four days later, on July 10, 1978, the trooper obtained a warrant to

1. 35 P.S. § 780–113(a)(31).

2. 35 P.S. § 780–113(a)(30).

search the apartment for marijuana and related items. He named Quinn as the "owner, occupant or possessor" of the premises, and stated that probable cause to believe that marijuana would be found was based upon the anonymous tip, which he summarized, and on his smelling marijuana outside the apartment on the night of July 6. The trooper claimed that a "check made at the rental office of the apartment complex revealed that in fact one Diane Marie QUINN was a leasee [sic] of the described residence[;]" although he admitted at the suppression hearing that the only information he possessed on that issue when he swore to the affidavit was the telephoned tip and the statement of a local police officer.[3] The warrant was executed shortly thereafter, and appellant, who shared the apartment with Quinn and another woman, was arrested upon discovery of marijuana in a closet.

Assuming, without deciding, that probable cause existed when the trooper smelled the marijuana, I conclude that, at the time he applied for the warrant, the information was stale and could not support issuance thereof.

"The proceeding by search warrant is a drastic one. Its abuse led to the adoption of the Fourth Amendment, and this . . . should be liberally construed in favor of the individual." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260, 262–63 (1932).

> In order for the issuance of a search warrant to be constitutionally valid, the issuing officer must reach the conclusion that probable cause exists at the time he issues the warrant. Such a decision may not be made arbitrarily and must be based on facts which are closely related in time to the date the warrant is issued. [Citations omitted.] If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, <u>unless it is also shown that the criminal activity continued up to or about that time.</u>

---

**3.** Although Quinn was a tenant of the apartment and contributed to the rent therefor, she had not signed the lease.

*Commonwealth v. Shaw*, 444 Pa. 110, 113–14, 281 A.2d 897, 899 (1971) (emphasis added). It is evident that the requirement stated by the words underscored above is of crucial importance. *See Commonwealth v. Jackson*, 461 Pa. 632, 337 A.2d 582 (1975); *Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. Suppa*, 223 Pa.Super. 513, 302 A.2d 357 (1973); *Commonwealth v. Bove*, 221 Pa.Super. 345, 293 A.2d 67 (1972). "[P]robable cause is not determined by merely counting the number of days between the time of the facts relied upon and the warrant's issuance." *United States v. Rahn*, 511 F.2d 290, 292 (10th Cir. 1975).

In the case before us, it is clear that the issuing magistrate was not possessed of information sufficient to establish probable cause to believe that criminal activity was afoot *at the time of the request for the warrant.* The telephoned tip had been provided by an informant whose reliability could not be established. The information that Quinn was a lessee of the apartment, besides being erroneous, is corroborative of nothing, since leasing an apartment is not a criminal act. *See Spinnelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 637 (1969); *Commonwealth v. Eazer, supra*, 455 Pa. at 324 n. 4, 312 A.2d at 400 n. 4. The discovery of the odor of marijuana on a single occasion, while perhaps constituent of probable cause *at that time*, does not establish the requisite "actual continuity of the illegal enterprise" *on the date the affidavit was sworn. Id.*, 455 Pa. at 324, 312 A.2d at 400.

The trial court's distinction of the instant case from cases involving delay in the execution of a search warrant is invalid, our Supreme Court having held that such situations are "closely related." *Commonwealth v. Eazer*, 455 Pa. at 326, 312 A.2d at 401. The following directive of *Commonwealth v. McCants*, 450 Pa. 245, 299 A.2d 283 (1973) may therefore be applied to the instant case:

> There are times when the facts and circumstances presented to the magistrate remain unchanged long after the warrant is issued. However, once it is recognized that it is *possible* for the facts and circumstances to change with the passing of time, a redetermination of probable cause is constitutionally required.

450 Pa. at 249, 299 A.2d at 286 (emphasis in original). This is particularly true where the crime alleged is the possession of narcotics, since "it [is] likely that such items would be quickly disposed of." *Commonwealth v. Novak*, 233 Pa.Super. 236, 241, 335 A.2d 773, 776 (1975). At the suppression hearing, the police officer testified that, in his experience as an undercover narcotics investigator, such had sometimes been the case:

[By defense counsel:]

Q. The question was: On some of those occasions that you were present when marijuana was being smoked, would it also be fair to state that this marijuana was brought into the apartment by a person who did not live there and taken when that person left the apartment?

A. Yes sir, that is possible.

The warrant thus was void because of the passage of an unreasonably long period of time between the only instance of criminal activity and the swearing out of the affidavit, and because of the absence of any showing that the activity continued to the latter time.[4] *See Commonwealth v. McCants, supra*, 450 Pa. at 249–50, 299 A.2d at 287.

If we were to sustain the magistrate's determination, the issuance of search warrants would be allowed solely upon suspicion of criminal conduct, a standard far less demanding than that embodied in the Fourth Amendment. We cannot countenance such a deviation from explicit constitutional norms. "Indeed, if the affidavit . . . in this case

**4.** It must be emphasized again that the length of time is *not* the dispositive factor; whether a delay in obtaining a warrant is reasonable should depend on "the facts of each case: the reason for the delay, the nature of the property sought in the search (its size, its mobility, whether it is consumable or ordinarily expended, whether it is often carried on the person and thus removed from location to location), etc." *Commonwealth v. McCants, supra*, (Pomeroy, J., concurring). *See State v. Guthrie*, 90 Me. 448, 38 A. 368 (Me.1897) (three days' delay in execution of warrant held unreasonable on the facts of the case); *Commonwealth v. Bradish*, 25 Bucks Co.L.Rep. 355 (1974). *See also Commonwealth v. Simmons*, 450 Pa. 624, 630–31 n. 4, 301 A.2d 819, 823 n. 4 (1973); W. La Fave, *Search and Seizure* § 3.7(a) (vol. 1, p. 683); § 4.7(a) (vol. 2, p. 115).

be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for [the magistrate]." [Citation omitted.] "It is one thing to expect the magistrate to give a commonsense [sic] reading to the facts set forth and to draw inferences from them. It is quite another thing to expect the magistrate to reach for external facts and to build inference upon inference in order to create a reasonable basis for his belief that a crime is *presently* being committed."

*Commonwealth v. Simmons, supra,* 450 Pa. 624, 631, 301 A.2d 819, 823, *quoting Rosencrantz v. United States,* 356 F.2d 310, 317 (1st Cir. 1966) (emphasis in original).

Since the warrant was illegally issued, the search conducted pursuant thereto was constitutionally unreasonable, and the evidence discovered as a result of that search should be suppressed. Appellant's arrest, based on the unlawfully found marijuana, was illegal, and his subsequent incriminating statement to the police should be suppressed as well, it being obvious on the record that the Commonwealth cannot show attenuation of the statement from the illegal conduct sufficient to purge from the former taint imparted by the latter. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1973); *Commonwealth v. Collini,* 264 Pa.Super. 36, 47, 398 A.2d 1044, 1049–50 (1979).

The majority appear to rely on the police officer's *suppression hearing testimony* that on July 10 (the day the warrant was executed), there were "enough troopers to help [him] with the search warrant and the execution of it." Since this statement had not been reduced to a sworn affidavit prior to the issuance of the warrant, the magistrate could not properly have relied thereon. Pa.Crim.P. 2003(a).[5] For the same reason, the statement was inadmissible in the suppression hearing and cannot be considered by this court in a review of the determination of probable cause. Pa.R.Crim.P.

---

**5.** Rule 2003(a) provides:

No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

2003(b).[6]  *See Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Maldonado*, 259 Pa.Super. 548, 393 A.2d 962 (1978). The statement, moreover, proves nothing; the mere fact that a number of officers, judged by the witness to be sufficient for a given purpose, was present at a certain place at a certain time is entirely irrelevant to the issue whether the officers had, at that time, probable cause to believe that a crime was being committed.

The majority have attempted to buttress their position by taking judicial notice of the "fact that July 4th was a holiday, and the minimal delay occurred over a holiday weekend." Although they do not so state expressly, they seem to imply that the police officer's unreasonable delay in obtaining the warrant will be excused by an assumption that so many state police officers were absent from work or otherwise unavailable for at least six days after July 4 that a warrant could not have been served before Monday, July 10. This is baseless. There is no evidence of the number or availability of officers on duty at any time relevant to this case, and the majority's piling of supposition upon speculation cannot substitute for evidence. In any event, such evidence would constitute no legal basis for a finding of probable cause. Probable cause cannot be made to wait upon the size, deployment or vacation schedule of a police force.

The only other reason given by the state trooper for his delay was the assertion that his "investigation" had continued during the four days after his detection of the marijuana odor. This information, like the other statement, was never written and sworn to before the issuing authority, and, therefore, may not be considered in a probable cause determination. Pa.R.Crim.P. 2003(a) and 2003(b).[7] Even if

**6.** Rule 2003(b) provides:

> At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (a).

**7.** *See* notes 5 and 6 *supra.*

the information had appeared in the affidavit, it would contribute nothing to a finding of probable cause, since, as the officer testified, the continued investigation uncovered no additional suspicious activity. *See Commonwealth v. Shaw, supra.* "A police officer's unsubstantiated impression that a particular crime is of the sort which is usually continuing is not sufficient; nor may a magistrate issue a warrant upon such an impression." *Commonwealth v. Eazer,* 455 Pa. at 324, 312 A.2d at 400, citing *Spinelli v. United States, supra.*

I should reverse the judgment of sentence and remand the cause for a new trial.