Commonwealth *v.* Gianelli et al., Appellants.

Submitted December 3, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*W. Hamlin Neely,* for appellants.

*Lawrence J. Brenner,* Assistant District Attorney, and *George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 21, 1974:

The sole issue raised by appellants is whether their motion to suppress should have been granted on the ground that the affidavit in support of the search warrant was insufficient. The facts are set out by Judge HOFFMAN in the Dissenting Opinion. However, the majority of the court considers that read as a whole the affidavit was sufficient to sustain an independent and detached appraisal that probable cause for a search

existed. *United States v. Ventresca*, 380 U.S. 102 (1965); *Commonwealth v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971). The affidavit contains many key facts (*e.g.*, the telephone number, a description of the mode of operation, the clear implication that the informer supplied the address for the surveillance, an indication that the activity in question took place repeatedly), and it is impressively candid ("The informant does not have personal knowledge of this taking place during the week, but he does know that it takes place on Sundays"). These factors, together with the corroborating facts set forth in the affidavit, *see United States v. Harris*, 403 U.S. 573 (1971), convince the court that, although this is a close case, the affidavit is sufficient.

Judgment of sentence affirmed.

CERCONE, J., concurs in this result.

WRIGHT, P. J., and SPAULDING, J., took no part in the decision of this case.

---

DISSENTING OPINION BY HOFFMAN, J.:

In a trial before the Court of Common Pleas of Lehigh County, appellant James Gianelli was convicted of bookmaking, trafficking in lotteries, and establishing a gambling place; and appellant Alma Gianelli was convicted of maintaining a gambling place. Both appellants contend that the trial court erred in admitting evidence which was illegally seized.

On November 13, 1970, police officer Bryce Mayes appeared before Alderman Leonard W. Heydt in Allentown. Officer Mayes presented the Alderman with several affidavits for search warrants for a building located at 457 North 22nd Street and for the appellants. These affidavits set forth the following information:

"A confidential informant who has proven to be reliable thru information he has supplied in the past that has led to arrests and convictions in other gamb-

ling related cases. This informant states that James Gianelli and his mother Alma Gianelli are engaged in booking sporting event bets at 457 North 22nd Street, Allentown, Lehigh County, Penna. This informant has personally been present when certain other persons have called bets in to the Gianelli residence. This informant states that the phone number called was 435-7869. That Alma answered the phone but that if she is not familiar with the name of the bettor she checks with her son to see if it is OK. This informant further states that to his knowledge this has been going on at least two weeks. The informant does not have personal knowledge of this taking place during the week but he does know that it takes place on Sundays. The other persons that have called bets into this number have on several occasions offered to place bets for the informant and explained the set up to him. A surveillance conducted by this affiant as well as by members of the Penna. State Police have placed both of these people in the home at the time that this Book-Making is to be taking place. These facts plus information gathered in the past as to the activities of James and Alma Gianelli tend to establish further probable cause for the issuance of a search warrant." In addition, the officer also related to the Alderman that his informant had observed other people phone appellants and place bets. These other people also described the nature of the gambling operations to the informant who did not place any bets himself.

An affidavit for a search warrant may be based upon hearsay and need not reflect the affiant's direct personal observations. The magistrate, however, "must be informed of some of the underlying circumstances from which the informant" determined the whereabouts of the evidence to be seized. In addition, the magistrate must be apprised of "some of the underlying circumstances from which the" affiant "concluded that the

informant . . . was 'credible' or his information 'reliable'." *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. ed. 2d 723, 729 (1964). It is especially crucial that the affiant establish the informant's reliability because "[o]ne who informs on alleged criminals is often a criminal himself, or at best a person who would not ordinarily be considered a reliable witness." *Commonwealth v. Wright,* 212 Pa. Superior Ct. 259, 262, 243 A. 2d 213 (1968) (HOFFMAN, J., dissenting, joined by JACOBS and SPAULDING, JJ.)

In the instant matter, Officer Mayes vouched for the reliability of his informant. A close examination of the affidavit and of the testimony presented to the magistrate, however, reveals that the Mayes' informant had in fact received his information from third parties whose reliability was not confirmed. *United States v. Roth,* 391 F. 2d 507 (C.A. 7, 1967) focused on the problem confronting us in this matter: Where an informant has received his information from a third party who may be wholly unreliable, an affiant's vouching "for the credibility or reliability of the informant cannot reach the crucial question posed by the hearsay on hearsay situation. . . ." 391 F. 2d at 510-511. In *Commonwealth v. Davis,* 225 Pa. Superior Ct. 242, 310 A. 2d 334 (1973), the Commonwealth conceded that hearsay on hearsay could not be used to substantiate probable cause for a warrant, 225 Pa. Superior Ct. at 244 (N. 2).

In the instant case, the magistrate was unaware of how the affiant's informant received his information. While it appears that the informant may have been in the company of others while they allegedly placed bets over the telephone to the Gianellis, there is nothing to indicate whether he actually observed appellants' phone number being dialed or whether he overheard their conversations. Furthermore, the record discloses that the informer did not himself place any bets with the

Gianellis. Under the circumstances, we must conclude that Officer Mayes' informant garnered his knowledge solely by word-of-mouth from parties whose credibility was unknown. Such evidence may not substantiate the issuance of a warrant.[1]

In *Commonwealth v. Falk*, 221 Pa. Superior Ct. 43, 290 A. 2d 125 (1972), the prosecution used the following to support the issuance of a warrant: An unidentified female claiming to have received drugs from the defendant gave them to Officer Ward who presented them to the affiant. In refusing to find this information trustworthy, this Court stated that there is no "indication that the female informant is credible, prudent, or otherwise trustworthy." 221 Pa. Superior Ct. at 48. This point was especially emphasized in *Commonwealth v. Garvin*, 448 Pa. 258, 263-264, 293 A. 2d 33 (1972): "The requirement of a determination of the trustworthiness of the source of the information cannot be met solely because it is channelled through an informant known to be reliable. While it may properly be assumed that the informant passed upon the reliability of the third person supplying the information to him, the law makes it most clear that it is not his judgment to make. As the Supreme Court in Aguilar, supra, did not permit the officers to make the determination for the issuing authority we cannot permit

---

[1] The danger of issuing a warrant based on such an affidavit was discussed in *Aguilar v. Texas*, supra, with respect to a narcotics seizure: "A police officer who arrived at the 'suspicion', 'belief' or 'mere conclusion' that narcotics were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that the narcotics were in someone's possession." 378 U.S. at 114 (N. 4). Such a procedure would circumvent our constitutional safeguards. An unreliable informant could, therefore, credit his information by conveying it to a reliable informant.

the officer in a warrantless arrest to delegate his responsibility to the informant. To accept without question the messages of alleged eyewitnesses relayed through informants would be to totally disregard the Supreme Court's mandates."

Similarly, the warrant here was issued without probable cause because the reliability of the informant's informants was never established.

Accordingly, the judgment of sentence should be reversed and the case remanded with a procedendo.